UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EMERSON ELECTRIC CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SUZHOU CLEVA ELECTRIC | ) | |
| APPLIANCE CO., LTD., | ) | Case No. 4:13-CV-01043 SPM |
| CLEVA HONG KONG LIMITED, | ) | |
| CLEVA NORTH AMERICA, INC., and | ) | |
| SEARS, ROEBUCK AND CO., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Emerson's Motion for Protective Order (Doc. 172) and

Defendants' Motion to Compel Testimony of Stuart Holsten (Doc. 173). For the reasons stated

below, both motions will be granted in part and denied in part.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Emerson's claims that Defendants manufacture, use, sell, offer to sell,

and/or import various vacuum cleaners (the "Accused Products") that infringe Emerson's

patents. In its initial disclosures, Emerson identified two of the inventors on the patents at issue

in this lawsuit (Stuart Holsten and Mark Tomasiak) as persons likely to have discoverable

information regarding the conception and reduction to practice of the inventions disclosed in the

patents at issue.

On July 22, 2014, Defendants conducted their first deposition of Mr. Holsten. At the

deposition, Emerson's counsel instructed Mr. Holsten not to answer several questions, including

questions about the meaning of claim terms in the patent at issue. Emerson filed a motion requesting "a protective order precluding Defendants from attempting to elicit expert opinion testimony from non-expert witnesses regarding claim scope, validity, and any other matters outside their personal knowledge or within the scope of Rule 702, unless and until that witness has been identified as an expert pursuant to Rule 26 and the Court's Case Management Order." (Doc. 154, at 7). On August 22, 2014, in an amended order, the Court granted Emerson's motion for a protective order in part and denied it in part, stating:

> Plaintiff's motion for protective order should be denied to the extent Defendants seek to elicit opinions held by Plaintiff's inventors that flow from the inventor's established expertise and personal observations made in the normal course of their duties. However, Plaintiff's motion should be granted, in part, to make clear that Defendants are prohibited from attempting to elicit opinions from Plaintiff's inventors based on information beyond that gained in the witness's ordinary duties, hypothetical information, or information provided to the witness for purposes of the litigation.

(Doc. 163). The Court further ordered that Defendants would be permitted to elicit answers to questions related to what the claims mean, the scope of the claims, and indefiniteness.

At a second deposition of Mr. Holsten on September 24, 2014, Emerson instructed the witness not to answer certain questions about an exhibit depicting one of the Accused Products, including questions asking Mr. Holsten to identify the parts of the exhibit that showed an impeller, a collector scroll, and a collector chamber. Emerson's counsel indicated that these matters were privileged because Emerson had retained Mr. Holsten to conduct a preliminary infringement investigation in this case. Upon questioning, Mr. Holsten stated that he had been retained to conduct an investigation by Emerson related to Emerson's patents and Defendants' products, but he did not remember many of the details regarding the subject matter and timing of his retention.

The parties contacted the Court by telephone to obtain a ruling on Emerson's privilege objections, and the Court ordered the parties to submit briefs. (Doc. 168). On October 3, Emerson submitted the instant motion for protective order, and Defendants submitted the instant motion to compel. (Docs. 172, 173). Each party filed a brief in response to the other party's motion. (Docs. 180, 181). At the request of the Court, Emerson also provided a declaration concerning the nature and timing of Mr. Holsten's retention. (Doc. 191, 191-1). Defendants then filed a supplemental memorandum opposing the motion for protective order. (Doc. 193).

## II. DISCUSSION

In its Motion for Protective Order, Emerson argues that because it retained Mr. Holsten as an expert to conduct pre-filing investigation in anticipation of this litigation, Rule 26(b)(4)(D) precludes Defendants from discovering the facts known and opinions held by Mr. Holsten regarding the Accused Products and certain other matters. Rule 26(b)(4)(D) states:

> Ordinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specifically employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial.

Fed. R. Civ. P. 26(b)(4)(D). In their opposition to Emerson's motion and in their Motion to Compel, Defendants contend that Emerson has not established that Mr. Holsten was an expert retained in anticipation of litigation, that such a contention is inconsistent with Emerson's prior position that Mr. Holsten was only a fact witness, and that the questions at issue do not seek material protected by Rule 26(b)(4)(D).

The Court shares Defendants' concern that Emerson's current position appears inconsistent with positions Emerson has previously taken before this Court. In Emerson's first motion for protective order with regard to Mr. Holsten, Emerson's position was that Mr. Holsten's expert testimony was not discoverable because he was a "fact witness" who had not

been prepared to give expert testimony. (Doc. 154). In addition, at the hearing on the motion for protective order, counsel for Emerson stated, "I'm not so sure that we have a hybrid witness here only because we're not relying on them as an expert witness. And to date they haven't formed any opinions." (Doc. 173-1). Moreover, despite the fact that Emerson's purpose in filing the earlier protective order was to prevent Defendants from discovering Mr. Holsten's opinions during his deposition, and despite the fact that Rule 26(b)(4)(D) expressly limits the discoverability of opinions from a retained, non-testifying expert, Emerson never mentioned the fact that Mr. Holsten was a retained, non-testifying expert.[1] Taken together, these statements and omissions certainly left the Court with the impression that Emerson viewed Mr. Holsten purely as a fact witness and that Emerson had *not* retained Mr. Holsten as a non-testifying expert. Nevertheless, the issue of whether Rule 26(b)(4)(D) applies to Mr. Holsten has not been squarely before the Court until now, and the Court will make its determination based on the evidence now in the record.

### A.  Mr. Holsten was retained as an expert in anticipation of litigation

As the party seeking a protective order under Rule 26(b)(4)(D), Emerson bears the burden of showing that Mr. Holsten was retained in anticipation of litigation. *See U.S. Inspection Servs., Inc. v. NL Engineered Solutions, LLC*, 268 F.R.D. 614, 617 (N.D. Cal. 2010); *State Auto Prop. & Cas. Ins. Co. v. PW Shoe Lofts, LP*, No. 4:10CV01951 AGF, 2011 WL 2174856, at *3 (E.D. Mo. June 3, 2011). "To conclude that an expert was hired in anticipation of litigation, a

---

[1] Even if Emerson's counsel believed that Mr. Holsten's work as a retained, non-testifying expert was not relevant to the specific deposition questions at issue in the prior motion for protective order, it was entirely predictable that Defendants would eventually seek Mr. Holsten's testimony regarding the Accused Products. Had Emerson discussed his status as a retained expert in its earlier protective order, the Court could have addressed it at that time, instead of subjecting Defendants and Mr. Holsten to yet another interrupted deposition and requiring this Court to consider a second motion for protective order.

lawsuit need not have been filed, but there must have existed more than a remote possibility of litigation." *Spearman Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 128 F. Supp. 2d 1148, 1151 (N.D. Ill. 2001) (quotation marks omitted).

Emerson has met this burden. Emerson submitted a Declaration of Dave Beth, former Vice President of Engineering for Emerson Tool Company (a division of Emerson Electric), describing the circumstances of Mr. Holsten's consulting work for Emerson. Mr. Beth stated that in February 2013, he was shown Cleva wet/dry vacuums that raised potential patent infringement concerns; that shortly thereafter, Emerson Tool Company began working with outside counsel to evaluate infringement of its patents by certain Cleva products in anticipation of potential litigation against Cleva; that Mr. Beth contacted Stuart Holsten in connection with this evaluation in March 2013 to ask him to analyze certain Cleva wet/dry vacuums, given his extensive knowledge of Emerson's wet/dry vacuums and his status as an inventor; that Mr. Holsten visited Emerson's facility on March 12, 2013 to view the Cleva products at issue; and that Mr. Holsten then provided Emerson with his analysis. This evidence plainly supports a conclusion that Emerson retained Mr. Holsten in anticipation of litigation to address matters related to the infringement of Emerson's patents by at least some of the Accused Products. *See PW Shoe Lofts, LP*, No. 4:10CV01951 AGF, 2011 WL 2174856, at *2 (holding that a party had met its burden of showing that a witness was retained in anticipation of litigation where the record contained a sworn affidavit describing the reason for retention of the expert, the date the expert was retained, and the topics of the opinions sought from him).

**B. Certain, but not all, facts known and opinions held by Mr. Holsten are protected by Rule 26(b)(4)(D)**

Even if Mr. Holsten is an expert who was retained in anticipation of litigation, that is not his only role in this litigation; he has also been identified as a fact witness by Emerson. When a

possible fact witness is retained as a non-testifying expert, it is often said that the witness "wears two hats": one as a retained expert whose facts and opinions are not discoverable, and one as a fact witness whose facts and opinions are discoverable. In such cases, courts have generally held that Rule 26(b)(4)(D) precludes discovery of facts learned and opinions created during the expert's consulting work, but does not preclude discovery of facts and opinions that pre-date the expert's retention. *See, e.g., Higher One, Inc. v. Touchnet Info. Sys., Inc.*, 298 F.R.D. 82, 87 (W.D.N.Y. 2014) (holding that a non-testifying expert witness "can be deposed concerning matters that pre-date his retention by the opposing party"); *Civil Constr. Techs., Inc. v. Hanover Ins. Co.*, No. 6:13-mc-42-Orl-18TBS, 2013 WL 1810817, at *3 (M.D. Fla. April 29, 2013) ("Rule 26(b)(4)(D) only protects against the disclosure of information created or learned by Consultant while working with Defendant's attorneys in preparing for and litigating claims and defenses involving Defendant."); *Positive Techs., Inc. v. Sony Elecs., Inc.,* No. 11-cv-2226 SI (KAW), 2013 WL 1402337, at *3-*4 (N.D. Cal. April 5, 2013) (holding that a retained expert's opinions formed before he was retained as an expert were discoverable); *Gerber Scientific Int'l., Inc. v. Roland DGA Corp.*, No. 3:06-CV-2024 (CFD), 2010 WL 3803206, at *6 (D. Conn. Sept. 20, 2010) ("Other courts that have confronted the problem of third parties who act as both consultants and fact witnesses have allowed parties to discover information from consulting experts that predates their work on the litigation."); *cf. PW Shoe Lofts, LP*, 2011 WL 2174856, at *3 ("Where non-testifying witnesses wear both hats, the expert may be considered a normal fact witness before the expert has been retained, and then may become a non-testifying expert witness after the expert is formally retained as a non-testifying expert witness.").

Of course, whether a particular fact was learned or opinion was formed during consulting work or prior to consulting work may be difficult to determine. The Court finds instructive the

court's analysis in *Atari Corporation v. Sega of America,* 161 F.R.D. 417 (N.D. Cal. 1994). In *Atari*, the parties' dispute concerned whether a patent inventor who had been hired as a non-testifying expert could be required to testify about the nature and scope of the invention, potential alternative configurations, theft of inventiveness, and the significance of various features of the invention. *Id.* at 421. The court stated:

> [The inventor], as a fact witness, may be deposed with regard to knowledge and opinions he held as an actor. That is, [the inventor] must give his opinions and facts known, except to the extent that they were obtained *exclusively* in anticipation or in preparation for trial as an expert for Sega. Further, where Atari's discovery "overlaps" information conveyed to [the inventor] as trial preparation material, Atari is entitled to that information to the extent that [the inventor] can answer questions without reference to information obtained solely from Sega in anticipation of litigation. The burden of proving an issue is beyond discovery rests squarely with Sega.

> Regarding [the inventor's] present-day opinions, only he knows whether he held an opinion on the exact boundaries of the nature and scope of his invention, every particular alternative configuration of his invention or other particular facts and ideas prior to his employment as an expert for Sega. To the extent that he held such opinions before Sega retained him as an expert, he must testify.

*Id.* at 421-22 (citations and internal quotation marks omitted; emphasis added).

The Court will apply the same principles here. For any given question posed to him, whether Mr. Holsten must answer depends on how he knows the answer to the question. If he could have answered the question even without having done the consulting work for Emerson that relates to this litigation, based on expertise and knowledge he formed prior to that consulting work, he must answer it—even if the answer might overlap with facts or opinions he provided to Emerson during his consulting work. On the other hand, if he can answer the question *only* because of his consulting work for Emerson (for example, because Emerson provided him with information during the consultation that makes it possible for him to answer the question, or because a study of the patents he did during his consultation makes it possible for him to answer

the question), he need not answer the question. He may simply state that he cannot answer the question without reference to the consulting work he did for Emerson. Thus, for example, if Defendants show Mr. Holsten a picture of one of the Accused Products and ask him to identify a "collector scroll" on the picture, Mr. Holsten must consider whether he could have answered that question in February 2013, before his consulting work for Emerson began. If he could have, he must answer it, even if he answered a similar question for Emerson after he was retained. If he could not have, he need not answer the question.

This approach ensures that Emerson cannot immunize from discovery the facts known and opinions held by a fact witness simply by retaining him as an expert and asking him questions about those facts and opinions. *See* 8A Wright, Miller, & Kane, Federal Practice & Procedure, § 2033 (3d ed.) ("There is a legitimate concern that a party may try to immunize its employees who are actors or viewers against proper discovery by designating them experts retained for work on the case. . . . [C]ourts should be exceedingly skeptical when employees who have otherwise discoverable information are designated 'experts.'"). This approach also guards against the unfairness of allowing Defendants to benefit from the effort and expense Emerson has incurred in hiring and working with a consulting witness to prepare its case. *See House v. Combined Ins. Co. of Am.*, 168 F.R.D. 236, 241 (N.D. Iowa 1996) (recognizing this as one of the purposes of Rule 26(b)(4)(D)). To the extent that Defendants require expert testimony that is not permitted under this order, they are free to hire their own experts. *See* 8A Federal Practice & Procedure, § 2032 ("Ordinarily, each party has a full opportunity to retain its own experts; unlike fact witnesses they are not unique and, in an era when experts' services are widely marketed, the supply of potential witnesses is often large.").

## C. Discovery of pre-filing investigation

In addition to seeking a protective order limiting discovery from Mr. Holsten under Rule 26(b)(4)(D), Emerson also asks the Court to "prohibit Defendants from further attempting to obtain discovery on Emerson's pre-filing investigation," including testimony from Mr. Holsten about the pre-filing investigation. In support of this argument, Emerson cites cases in which the courts refused to compel discovery directed toward determining whether a plaintiff had violated Rule 11 by failing to conduct a reasonable pre-filing investigation. *See Vasudevan Software, Inc. v. IBM Corp.*, No. 5:09-CV-05897, 2011 WL 940263, at *4 & n.2, *5 (N.D. Cal. Feb. 18, 2011) (refusing to compel answers to interrogatories asking the plaintiff to "describe in detail" the plaintiff's pre-filing investigation and noting that the defendant admitted that it served the interrogatories "to determine if [the plaintiff] failed to conduct a reasonable pre-filing investigation in violation of Rule 11" and that "courts are discouraged from using Rule 11 as a basis for discovery"); *TQP Development, LLC v. 1-800-Flowers.com, Inc.*, No. 2:11-CV-248, 2013 WL 7853448, at *1 (E.D. Tex. July 22, 2013) (refusing to compel a response to an interrogatory asking the plaintiff to "explain in detail . . . all communications between [the plaintiff and another entity] relating to the pre-filing investigation, filing, and prosecution of the case"; noting that no Rule 11 motion had been filed and no other basis for discovery had been offered).

These cases do not support an order prohibiting discovery of any matters related to a plaintiff's pre-filing investigation. Rather, they support the position that a defendant may not conduct broad discovery regarding pre-filing investigation for purposes of a Rule 11 motion, at least where no Rule 11 motion has been filed. Here, there is no indication that Defendants have sought broad discovery regarding Emerson's pre-filing investigation or have sought any

discovery for purposes of a possible Rule 11 motion. Instead, it appears that the questions posed to Mr. Holsten were directed toward learning facts and opinions relevant to the substantive issues in this case and toward assessing Emerson's new revelation that Mr. Holsten had been retained as an expert. To the extent that Emerson wishes to limit discovery of such matters, it must identify a specific privilege or rule that prohibits such discovery. Except as described above with regard to some matters known by Mr. Holsten, Emerson has not done so.

Accordingly,

**IT IS HEREBY ORDERED** that Emerson's Motion for Protective Order (Doc. 172) is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent that it seeks to preclude Mr. Holsten from testifying about facts he learned or opinions he developed only as a result of his work as a consulting expert for Emerson in anticipation of litigation. As to all other matters, it is denied.

**IT IS FURTHER ORDERED** that Defendants' Motion to Compel Testimony of Stuart Holsten (Doc. 173) is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent that it seeks to compel Mr. Holsten to testify about facts and opinions that were *not* developed only as a result of Mr. Holsten's work as a consulting expert for Emerson in anticipation of litigation. As to all other matters, it is denied.


Dated this 3rd day of November, 2014.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE