UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EMERSON ELECTRIC CO., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SUZHOU CLEVA ELECTRIC | ) |
| APPLIANCE CO., LTD., | ) Case No. 4:13-CV-01043 SPM |
| CLEVA HONG KONG LIMITED, | ) |
| CLEVA NORTH AMERICA, INC., and | ) |
| SEARS, ROEBUCK AND CO., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on the Motion for Summary Judgment of Non-Infringement as to Suzhou Cleva Electric Appliance Co., Ltd. ("Suzhou Cleva") and Cleva Hong Kong Limited ("Cleva Hong Kong"). (Doc. 229). Emerson consents to judgment being entered in favor of Suzhou Cleva but opposes the motion as to Cleva Hong Kong. (Doc. 249). For the following reasons, I will grant the motion as to Suzhou Cleva and deny it as to Cleva Hong Kong.

I.   **FACTUAL BACKGROUND**[1]

Emerson is the owner of several patents related to wet/dry vacuum cleaners. Emerson has brought claims based on six of these patents against Defendants Suzhou Cleva, Cleva Hong Kong, Cleva North America, Inc., and Sears, Roebuck & Co. Emerson alleges that Defendants

---

[1] These facts are taken from Defendants' Statement of Material Undisputed Facts, Emerson's response, and the exhibits cited therein, and they are viewed in the light most favorable to Emerson. In light of Emerson's consent to have judgment entered in favor of Suzhou Cleva, the Court omits the facts that are relevant only to Suzhou Cleva.

make, sell, offer to sell, or import various wet/dry vacuums (the "Accused Products") that infringe Emerson's patents.

Cleva Hong Kong is a company organized under the laws of Hong Kong. Cleva Hong Kong purchases Accused Products in China from a manufacturer in China, and it sells various Accused Products to customers based in the United States, including Sears. For example, Cleva Hong Kong is a party to a January 2012 Supply Agreement in which the "Seller" is listed jointly as Cleva Hong Kong and Cleva North America and the "Buyer" is listed as several Sears and Kmart entities in Illinois.[2] The Supply Agreement states, "Seller agrees to sell to Buyer the products listed in the attached Exhibit A," and Exhibit A lists various Accused Products.

Cleva Hong Kong is not directly involved in reaching out to North American customers or negotiating the terms of sales contracts with those customers; those matters are handled by Cleva North America. However, Cleva Hong Kong arranges the shipment and delivery of the Accused Products to Sears and other companies, prepares invoices, and receives payment. For example, Cleva Hong Kong delivers products directly to Sears, and Sears pays Cleva Hong Kong. When Cleva Hong Kong delivers products to its U.S.-based customers, the "Destination" is listed as "USA," but the shipping is done FOB China or FOB Shanghai.[3] Although the Supply

---

[2] In its motion, Cleva Hong Kong maintains that it is not a party to this Supply Agreement. The language of the contract is somewhat ambiguous concerning whether the party designated as the Seller along with Cleva North America was Suzhou Cleva or Cleva Hong Kong. (Supply Agreement, Doc. 135-8, at pp. 1, 15, 24). However, Cleva Hong Kong's 30(b)(6) deponent clearly testified that Cleva Hong Kong considers itself a party to the agreement. (Rule 30(b)(6) Dep. of Cleva Hong Kong, Doc. 249-1, at 19:3-6). Viewing the contract's language and this testimony together, in the light most favorable to Emerson as the nonmoving party, there is at least a genuine issue of fact concerning whether Cleva Hong Kong is a party to the 2012 Supply Agreement.

[3] FOB, or "free on board," is "a method of shipment whereby goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer." *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1374 n.3 (Fed. Cir. 2005).

Agreement lists prices for some products to be shipped FOB Alabama, Cleva Hong Kong's corporate deponent testified that those products should be purchased from Cleva North America and not from Cleva Hong Kong.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial responsibility of informing the court of the basis of its motion and of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the non-moving party must then set forth affirmative evidence from which a jury might return a verdict in his or her favor. *Anderson*, 477 U.S. at 256-57. The nonmoving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

In considering a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in favor of the nonmoving party. *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004). The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

### III. DISCUSSION

#### A. Suzhou Cleva

Defendants argue that Suzhou Cleva is entitled to summary judgment on the infringement claims against it because it is undisputed that Suzhou Cleva does not make, use, sell, offer to sell, or import any product anywhere. Emerson consents to a judgment of non-infringement being entered in favor of Suzhou Cleva. Accordingly, I will grant Defendants' motion with respect to Suzhou Cleva.

#### B. Cleva Hong Kong

Defendants argue that Cleva Hong Kong is entitled to summary judgment on the infringement claims against it because the undisputed evidence shows that it did not sell or offer to sell any of the Accused Products within the United States. Under 35 U.S.C. § 271, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). "It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007). For an offer to sell, "the location of the contemplated sale controls whether there is an offer to sell within the United States." *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1309 (Fed. Cir. 2010). "Any doubt as to whether [a defendant's] contracting activities in the United States constituted a sale within the United States under § 271(a) is resolved by the presumption against extraterritorial application of United States laws." *Halo Elecs., Inc. v. Pulse Elecs., Inc.,* 769 F.3d 1371, 1380 (Fed. Cir. 2014).

Cleva Hong Kong argues that because all of its sales and contemplated sales to United States-based customers were for delivery FOB China, with title to the products transferred in China, it did not sell or offer to sell any goods within the United States. As Emerson points out, however, the Federal Circuit has squarely rejected the argument that an FOB location outside the United States establishes that a sale occurred outside of the United States. *Litecubes, LLC v. N. Light Prods., Inc.*, 523 F.3d 1353 (Fed. Cir. 2008).

In *Litecubes*, the plaintiff brought a patent infringement suit against a Canadian company. *Id.* at 1357-58. At trial, it was shown that the Canadian company had sold and shipped allegedly infringing products to customers located in the United States, but it did so FOB, with title to the goods transferring while the goods were still in Canada. *Id.* at 1358, 1369. The jury found infringement, and the defendant moved for judgment as a matter of law, arguing that there was no sale in the United States because the products had been shipped FOB Canada. *Id.* at 1369. The Federal Circuit stated that its case law "is inconsistent with such a theory" and found "substantial evidence of a sale within the United States for purposes of § 271." *Id*. It stated:

> Since the American customers were in the United States when they contracted for the accused cubes, and the products were delivered directly to the United States, under *North American Philips* and *MEMC* there is substantial evidence to support the jury's conclusion that [the Canadian company] sold the accused cubes within the United States.

*Id.* at 1371. *See also SEB S.A. v. Montgomery Ward & Co., Inc.,* 594 F.3d 1360, 1375 (Fed. Cir. 2010) (affirming, on fundamental error review, a jury verdict finding a sale within the United States where goods were shipped with an FOB term outside of the United States; noting that the FOB term is not dispositive and suggesting that other relevant factors supporting the jury's finding included the foreign defendants' intention to sell products directly into the United States, the foreign defendants' affixing of American trademarks to the products, and invoices

identifying delivery to U.S. destinations); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1377 (Fed. Cir. 2005) (stating that "simply because an article is delivered 'free on board' outside the forum, a 'sale' is not necessarily precluded from occurring in the forum," but finding no sale in the United States where the foreign manufacturer sold products to a foreign intermediary and there was no evidence that title passed directly from the manufacturer to a U.S. customer). *Cf. N. Am. Philips Corp. v. Am. Vending Sales, Inc.*, 35 F.3d 1576, 1579-80 (Fed. Cir. 1994) (FOB term outside the forum is not dispositive for the purposes of a personal jurisdiction analysis).

Here, as in *Litecubes*, there is evidence showing that Cleva Hong Kong entered into sales contracts with customers in the United States and then delivered the Accused Products directly to customers in the United States. As in *Litecubes*, the fact that Cleva Hong Kong delivered the products FOB China does not establish that the sale did not occur in the United States. Sears and Target have addresses in the United States, and Defendants do not contend that those companies were outside the United States when they contracted to buy Accused Products with Cleva Hong Kong or when they paid Cleva Hong Kong for those products. In addition, as in *SEB*, Cleva Hong Kong's intent to sell the products directly to customers in the United States is apparent from the Supply Agreement and from the invoices indicating the destination of the Accused Products was "USA." Thus, here, as in *Litecubes* and *SEB*, there is evidence from which a jury could reasonably conclude that Defendants offered to sell, and did sell, Accused Products within the United States.

In their Reply, Defendants attempt to distinguish *Litecubes* on the ground that "the determinative fact in *Litecubes* for purposes of § 271(a) liability was that the accused infringer delivered the products in the United States." (Doc. 255, at pp. 9-10). To suggest that the facts

here are different, they point to a receipt listing Target Corporation as the "importer" of Accused Products and indicating that a forwarder called "APL Logistics" acted on instructions of Target stores and issued a forwarder's cargo receipt as agent for Target Stores. (Doc. 135-5). However, even assuming that this document is representative of how Cleva Hong Kong shipped all of the Accused Products, it is not a basis on which to distinguish *Litecubes*. First, it appears that a similar situation was present in *Litecubes*: the district court noted that delivery of the products to the United States was "at the direction and expense of the purchaser," *Litecubes*, No. 4:04CV00485 ERW, 2006 WL 5700252, at *3 (E.D. Mo. Aug. 25, 2006), and the foreign defendant's position was that the United States customer was the party who actually imported the products, 523 F.3d at 1359. Second, the Court finds persuasive the reasoning of the Northern District of Illinois, which refused to distinguish *Litecubes* on the ground that the foreign defendant merely delivered the products to the FOB point and the U.S. customer, "through its freight forwarder," shipped them to the United States. *See Zimnicki v. Gen. Foam Plastics Corp.*, No. 09 C 2132, 2010 WL 3941869, at *4 (N.D. Ill. Oct. 4, 2010). The court in *Zimnicki* noted that that there was no evidence that the U.S. customer had any physical presence in China, stated that it "d[id] not see why it should matter whose 'shipper' the party uses—the 'sale' between [the defendant and the U.S. customer] is still direct," and noted that "to rule otherwise would encourage gamesmanship." *Id.* Here, similarly, the sales between Cleva Hong Kong and the U.S.-based customers were direct, there is no evidence that the U.S.-based customers had any physical presence in China, and Defendant offers no compelling reason why the identity of the freight forwarder should be dispositive of the question of where the sale occurred.

To support their motion, Defendants rely primarily on the recent case of *Halo Electronics, Inc. v. Pulse Electronics, Inc.*, 769 F.3d 1371 (Fed. Cir. 2014), which Defendants

argue involved facts substantially identical to the facts of this case. In *Halo*, the defendant was a foreign manufacturer who engaged in some contract negotiations in the United States and entered a general business agreement (not a binding sales contract) with a company in the United States. *Id.* at 1375. All other aspects of the sale of the accused products occurred entirely overseas, between foreign entities. *Id.* at 1375-77. The foreign defendant received purchase orders from a third-party contract manufacturer in Asia, manufactured the accused products in Asia, delivered the accused products to the third-party contract manufacturer in Asia, and paid the third-party contract manufacturer in Asia. *Id.* at 1375. The accused products at issue "were at no point, in transit or otherwise, in the United States." *Id.* at 1379.

In assessing whether the foreign manufacturer had sold the products in the United States, the Federal Circuit analyzed its prior precedent and stated:

> While we have held that a sale is not limited to the transfer of tangible property but may also be determined by the agreement by which such a transfer takes place, the location of actual or anticipated performance under a contract for sale remains pertinent to the transfer of title or property from a seller to a buyer. Consistent with all of our precedent, we conclude that, when substantial activities of a sales transaction, including the final formation of a contract for sale encompassing all essential terms as well as the delivery and performance under that sales contract, occur entirely outside the United States, pricing and contracting negotiations in the United States alone do not constitute or transform those extraterritorial activities into a sale within the United States for purposes of § 271(a).

*Id.* at 1379 (citations and quotation marks omitted). The court found that the evidence presented was insufficient to establish a sale within the United States, because the agreement formed in the United States was not a contract to sell any specific products, the foreign defendant received purchase orders abroad, the products at issue "were manufactured, shipped, and delivered to buyers abroad," and the foreign defendant "was paid abroad by the contract manufacturers" rather than by an entity in the United States. *Id.*

Defendants' reliance on *Halo* is unavailing. In contrast to *Halo*, in which the foreign defendant contracted with, shipped products to, and was paid by buyers abroad, here Cleva Hong Kong contracted with, shipped products to, and was paid by buyers in the United States. The Federal Circuit in *Halo* simply did not address the situation presented here (and in *Litecubes*), in which a foreign seller sells products to a buyer in the United States. The district court cases cited by Defendants are similarly inapplicable, because they involved foreign defendants who delivered products to entities located entirely outside the United States. *See Ziptronix, Inc. v. OmniVision Techs., Inc.,* No. C 10-05525 SBA, 2014 WL 5463051, at *5-*6 (N.D. Cal. Oct. 21, 2014) (no sales occurred in the United States where California corporation contracted with Taiwanese corporation to manufacture components, the Taiwanese corporation delivered the components to entities located in Taiwan, and the California corporation arranged for other companies in Asia to combine the components with other components and then arranged for the finished products to be imported into the United States); *Quality Tubing v. Precision Tube Holdings Corp.,* 75 F. Supp. 2d 613, 614, 620-21 (S.D. Tex. 1999) (negotiation and execution of a contract in the United States did not establish a sale in the United States where performance of the contract involved "the manufacture of tubing outside the United States, for shipment outside the United States, to a customer outside the United States, for use outside the United States" and "the allegedly infringing goods will never enter the United States").

The Court also finds unpersuasive Defendants' assertion that in *Halo*, the Federal Circuit "rejected the analysis it used in its earlier decisions in *Litecubes* and *MEMC*." (Doc. 255, at p. 8). After reviewing its prior case law, including *Litecubes* and *MEMC*, the Federal Circuit in *Halo* noted that its analysis was "[c]onsistent with all of [its] precedent." *Id.* at 1379. Nothing in the analysis or holding of *Halo* calls into question the *Litecubes* holding.

9

In sum, under Federal Circuit law, the fact that Cleva Hong Kong's sales and contemplated sales to U.S. customers were for delivery FOB China does not establish that Cleva Hong Kong did not sell or offer to sell Accused Products in the United States for purposes of § 271. Cleva Hong Kong offers no other basis for granting its motion. Therefore, Cleva Hong Kong has failed to show it is entitled to judgment as a matter of law on the question of infringement, and its motion for summary judgment will be denied.

IV.   **CONCLUSION**

For all of the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment of Non-Infringement as to Suzhou Cleva and Cleva Hong Kong (Doc. 229) is **GRANTED IN PART and DENIED IN PART**. As to Suzhou Cleva Electric Appliance Co., Ltd., the motion is **GRANTED.** As to Cleva Hong Kong Limited, the motion is **DENIED**.

Dated this 8th day of May, 2015.

/s/ Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE