UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| EMERSON ELECTRIC CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SUZHOU CLEVA ELECTRIC | ) | |
| APPLIANCE CO., LTD., | ) | Case No. 4:13CV1043SPM |
| CLEVA HONG KONG LIMITED, | ) | |
| CLEVA NORTH AMERICA, INC., and | ) | |
| SEARS, ROEBUCK AND CO., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This case is before the Court on Defendants' Motion to Exclude Testimony of Plaintiff's Proffered Damages Expert, Ms. Donna Beck Smith (Doc. 280) and Plaintiff's Motion to Exclude Testimony of Mark Gallagher (Doc. 284). For the reasons stated below, both motions will be granted in part and denied in part.

## I.    BACKGROUND

The factual background for this case has been set forth in the Court's prior orders and will not be repeated here. Essentially, this case involves Plaintiff Emerson Electric Company's claims that Defendants have infringed six of Plaintiff's patents, each of which relates to various improvements to wet/dry vacuum cleaners. The Court has granted summary judgment in favor of Defendants as to three of the patents asserted to be infringed. (Doc. 318). However, questions of possible infringement damages remain for three patents: U.S. Patent Nos. 5,924,165 (the '165 Patent), 6,035,485 (the '485 Patent), and 5,996,170 (the '170 Patent).

Plaintiff has retained an expert, Donna Beck Smith ("Ms. Smith"), to provide opinions regarding the damages to which Plaintiff is entitled as result of Defendants' infringement of Plaintiff's patents. *See* Expert Report of Donna Beck Smith ("Smith Report"), Doc. 281. Defendants move to exclude portions of Ms. Smith's opinions on several grounds. Defendants have also retained an expert, Mark Gallagher ("Mr. Gallagher"), to provide a rebuttal to Ms. Smith's opinions and to offer his own opinions regarding the damages to which Plaintiff is entitled. *See* Expert Report of Mark Gallagher ("Gallagher Report"), Doc. 285-1. Plaintiff moves to exclude portions of Mr. Gallagher's opinions on several grounds.

## II.   LEGAL STANDARDS

### A.  Admissibility of Expert Testimony

The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence 702. Rule 702 states, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." This rule imposes a gatekeeping responsibility on the district court, in which the court must ensure that expert testimony is both relevant and reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). "The proponent of the expert testimony bears the burden to prove its admissibility." *Menz v. New Holland N. Am., Inc.*, 507 F.3d 1107, 1114 (8th Cir. 2007). "Decisions concerning the admission

of expert testimony lie within the broad discretion of the trial court." *Anderson v. Raymond Corp.*, 340 F.3d 520, 523 (8th Cir. 2003) (quotation marks omitted).

"Rule 702 favors admissibility if the testimony will assist the trier of fact, and doubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Clark v. Heidrick*, 150 F.3d 912, 915 (8th Cir. 1998) (quotation marks and citations omitted). "Rejection of expert testimony is the exception rather than the rule. . . . Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1101 (8th Cir. 2006) (citing *Daubert*, 509 U.S. at 692-94, 96). However, "[w]here 'opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert,' a district court 'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Smith v. Cangieter*, 462 F.3d 920, 924 (8th Cir. 2006) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## B. Patent Infringement Damages

Damages for patent infringement are governed by 35 U.S.C. § 284, which provides in part that "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. 284. "The two 'alternative categories of infringement compensation' under section 284 are 'the patentee's lost profits and the reasonable royalty he would have received through arms-length bargaining.'" *AztraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1330 (Fed. Cir. 2015) (quoting *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)). "'To recover lost profits damages, the patentee must show a reasonable probability

that, 'but for' the infringement, it would have made the sales that were made by the infringer.'" *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1371 (Fed. Cir. 2006) (quoting *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995)). The purpose of the alternative reasonable royalty approach to damages is to "set a floor below which damage awards may not fall." *Rite-Hite*, 56 F.3d at 1544.

## III.  DISCUSSION

### A.  Plaintiff's Motion to Exclude Ms. Smith's Opinions

Ms. Smith has prepared opinions regarding Plaintiff's damages under both a lost profits theory and a reasonable royalty theory. Defendants make three distinct arguments for excluding various portions of Ms. Smith's opinions as unreliable. The Court will address each in turn.

#### 1.  *Ms. Smith's Opinions as to Lost Profits Damages*

Defendants first argue that Ms. Smith's opinions as to Plaintiff's lost profits damages should be excluded because they are unreliable. Specifically, Defendants argue that these opinions are unreliable because in forming them, Ms. Smith relied on financial summaries Plaintiff generated solely for this litigation rather than on sufficient underlying documents.

The Federal Circuit has accepted a four-factor test set forth by the Sixth Circuit in *Panduit Corp. v. Stahlin Brothers Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) as "a useful, but non-exclusive, way for a patentee to prove entitlement to lost profits damages." *Rite-Hite*, 56 F.3d at 1545 (citing *Panduit*, 575 F.2d at 1156). "The *Panduit* test requires that the patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made. *Id.* In assessing the fourth *Panduit* factor, the amount of profit Plaintiff would have made absent the infringement, Ms. Smith expressly relied on three

summary spreadsheets created by Plaintiff, including a summary of Plaintiff's unit sales (Exhibit 5 to the deposition of Plaintiff's 30(b)(6) representative, Brian Sponsler) and two profit and loss summaries (Exhibits 9 and 10 to the deposition of Plaintiff's 30(b)(6) representative). She also included in her general list of documents reviewed and/or relied on three additional summary spreadsheets created by Plaintiff: a summary of fixed costs (Exhibit 6), a summary of variable costs (Exhibit 7), and a summary of Plaintiff's total costs per unit (Exhibit 8). Defendants argue that because Plaintiff's Rule 30(b)(6) witness testified that each of these documents were created or collated for this litigation and because Ms. Smith did not review the actual, contemporaneously-generated financial statements or invoices from which they were generated, her opinions based on these documents are unreliable and must be excluded. Plaintiff argues that Ms. Smith reasonably relied on these documents because information contained in them is information Plaintiff collects and uses in the ordinary course of business. Plaintiff also points out that Ms. Smith took steps to verify the accuracy of the data.

Defendants' challenge is essentially an assertion that Ms. Smith's opinion was not based on sufficient facts or data because it was based on reports generated for purposes of litigation. However, Defendants cite no case law supporting the proposition that reliance on such reports necessarily renders an opinion unreliable or inadmissible. Essentially, Defendants are challenging the factual basis of Ms. Smith's opinion. "'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.,* 408 F.3d 410, 416 (8th Cir. 2005) (quoting *Hartley v. Dillard's, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)). However, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be

excluded." *Id.* An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." *Id.*

Ms. Smith's opinions regarding lost profits damages are not so fundamentally unsupported that they can offer no assistance to the jury, and they are sufficiently reliable to be admissible. The information contained in the spreadsheets at issue is plainly relevant to the question of lost profits damages. Although Mr. Sponsler did testify that several of these spreadsheets were produced or collated for this litigation, which may cast some doubt on their reliability, the evidence generally supports Plaintiff's position that the *data contained in the spreadsheets* was collected in the ordinary course of Plaintiff's business. For example, when asked about the 2007 profit and loss statement shown in Exhibit 9, Mr. Sponsler testified that it would have been generated within two weeks after the conclusion of fiscal year 2007. As to other documents at issue, Mr. Sponslor generally testified that the information contained therein came from Plaintiff's accounting systems and data files. Moreover, the record shows that Ms. Smith took steps to verify the accuracy of the data in the documents she relied on. Specifically, Ms. Smith testified at her deposition that she met in person with Plaintiff's Director of Finance, Larry Kogin, randomly selected data points from the reports she was given, and had him pull up information from Plaintiff's computer systems to prove that the numbers actually came out of the system.

To the extent that Defendants wish to challenge the accuracy of the facts on which Ms. Smith relied, that is a challenge to the weight to be given to her opinion rather than a question of admissibility. Problems with the factual basis for Ms. Smith's opinion can be addressed through cross-examination and contrary testimony. *See, e.g., Filbert v. Joseph T. Ryerson & Son, Inc.*, No. 4:10CV1189 JCH, 2012 WL 2154347, at *3 (E.D. Mo. June 13, 2012) ("Defendant's

assertions concerning flaws in [the expert's] methodology or underlying assumptions are proper subjects for [the Defendant's] own expert testimony and for thorough cross-examination before the trier of fact") (quotation marks omitted); *Harrington v. Sunbeam Products, Inc.*, No. 4:07-CV-1957 CAS, 2009 WL 701994, at *12 (E.D. Mo. March 13, 2009) (stating that the defendant's "assertions concerning flaws in [the expert's] methodology and the factual basis of his testimony . . . go to the weight and credibility of his testimony as opposed to its admissibility and are proper subjects for thorough cross-examination before the trier of fact.").

### 2. *Ms. Smith's Opinions as to Damages Based on the '165 Patent*

Defendants' second argument is that Ms. Smith's opinions as to lost profits and reasonable royalty damages based on the '165 Patent should be excluded as irrelevant and unreliable.

In her report, Ms. Smith noted that "the '165 Patent relates to an improved caster foot assembly for an appliance (e.g., a wet/dry vacuum cleaner)." Smith Report, Doc. 281, at p. 5. She found that the caster foot technology is "a secondary driver for consumers' buying decisions" and opined that a reasonable royalty for the use of the technology would be 5% of the gross sales of the full wet/dry vacuums that infringe the '165 Patent. She then calculated reasonable royalty damages for infringement of the '165 Patent by multiplying the total gross sales of the '165 accused wet/dry vacuums (the royalty base) by 5% (the royalty rate). In addition, in calculating lost profits attributable to infringement of the '165 Patent, Ms. Smith used the entire sales price of the full wet/dry vacuums. Defendants argue that Ms. Smith's calculation of damages based on the entire sales price of the full wet/dry vacuums violates the entire market value rule and fails to apportion damages as required by Federal Circuit law.

"[W]hen claims are drawn to an individual component of a multi-component product, it is the exception, not the rule, that damages may be based upon the value of the multi-component product." *VirnetX, Inc. v. Cisco Sys., Inc*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). Under the "entire market value" exception, "[i]f it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012) *See also Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1268 (Fed. Cir. 2013) ("A patentee may assess damages based on the entire market value of the accused products only where the patented feature creates the basis for customer demand or substantially creates the value of the component parts."). "In the absence of such a showing, principles of apportionment apply." *VirnetX*, 767 F.3d at 1326.

Where principles of apportionment apply, the jury must "'apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features' using 'reliable and tangible' evidence." *Ericsson, Inc. v. D-Link Sys. Inc*., 773 F.3d 1201, 1233 (Fed. Cir. 2014) (quoting *Garretson v. Clark*, 111 U.S. 120, 121 (1884)). Applying this principle in the reasonable royalty context, the Federal Circuit has held that a patentee is generally not permitted to use as a royalty base the market value of the entire multi-component accused product. *VirnetX*, 767 F.3d at 1326; *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012). Instead, the patentee must apportion damages by identifying "a royalty base much more closely tied to the claimed invention than the entire market value of the accused products." *VirnetX*, 767 F.3d at 1327. The Federal Circuit has reasoned that "[a]dmission of [the overall revenues from the entire product], which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered

damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *LaserDynamics*, 694 F.3d at 68 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)).

In some cases, the required apportionment may be accomplished by calculating damages based on the "smallest salable patent-practicing unit." *See LaserDynamics*, 694 F.3d at 67. However, "a patentee's obligation to apportion damages only to the patented feature does not end with the identification of the smallest salable unit if that unit still contains significant unpatented features." *VirnetX*, 767 F.3d at 1329. "Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . . , the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology." *Id.* at 1327. Applying these rules in *VirnetX*, the Federal Circuit held that the district court should have excluded testimony from an expert who, in calculating a reasonable royalty for the use of a patented software feature used in an iPhone, used as his royalty base the cost of an iPhone (the smallest salable patent-practicing unit) and "did not even attempt to subtract any other unpatented elements from the base, which therefore included various features indisputably not claimed by [the plaintiff], e.g., touchscreen, camera, processor, speaker, and microphone, to name but a few." *Id.*

Defendants argue that Ms. Smith improperly used the entire market value approach here by calculating damages based on the entire value of the accused wet/dry vacuums, despite the absence of evidence that the patented caster foot assembly drives demand for the products as a whole. Defendants contend that Plaintiff is required to apportion damages between those

attributable to the patented feature (the caster foot assembly) and those attributable to other, unpatented features of the accused wet/dry vacuums.

Plaintiff does not argue that the entire market value approach is appropriate in this case. Instead, Plaintiff argues that no apportionment is required beyond the level of the accused wet/dry vacuums, because the patented feature of the '165 Patent is not a caster foot assembly, but rather an *appliance* with a caster foot assembly and a drum.[1] Plaintiff contends that the smallest salable patent-practicing unit that includes all of the patented features is the accused wet/dry vacuum, and that Ms. Smith properly used that as her royalty base. Plaintiff asserts that using the value of the caster foot assembly alone to determine the royalty base would be improper because it would exclude the value of some claimed elements of the patent.

Plaintiff's argument is unpersuasive for several reasons. First, Plaintiff's argument that the patented feature is the accused wet/dry vacuum as a whole, rather than the caster foot assembly, is inconsistent with Ms. Smith's own report and the record as a whole. In summarizing the patents at issue, Ms. Smith plainly describes the '165 patented feature as being the caster foot assembly, not a wet/dry vacuum or any other components of a wet/dry vacuum. She states, "[the] '165 Patent relates to an improved caster foot assembly for an appliance (e.g., a wet/dry vacuum cleaner). Specifically, the '165 Patent claims a caster foot assembly . . . ." Smith Report, Doc. 281, at p. 5. In assessing a royalty rate, Ms. Smith similarly discusses how "the caster foot technology" affects consumer buying decisions. *Id.* at p. 19. Moreover, throughout this litigation, Plaintiff has discussed the '165 Patent as being directed toward a caster foot assembly. *See* Pl.'s Opening Brief on Claim Construction, Doc. 91, at p. 43 ("The '165 patent is generally directed to

---

[1] Some of the infringed claims of the '165 Patent claim "a caster foot assembly for an appliance," while others claim "an appliance, comprising: (a) a drum; [and] (b) at least one caster foot assembly . . ."

an improved design for a caster foot assembly for a wet/dry vacuum."); Pl's. Mem. Supp. Pl's. Mot. Summ. J., Doc. 235, at p. 5 ("The '165 Patent provides a caster foot assembly . . . .").

In addition, even if the accused wet/dry vacuum were the smallest salable patent-practicing unit, the Federal Circuit has made it clear that apportionment *beyond* the smallest salable patent-practicing unit may be required "if that unit still contains significant unpatented features." *VirnetX*, 767 F.3d at 1329. That is clearly the case here. The '165 Patent claims do not claim a "wet/dry vacuum" and do not claim any features of a wet/dry vacuum other than a drum and a caster foot assembly. The accused wet/dry vacuums obviously contain numerous wet/dry vacuum-specific features (e.g., motors, filters, mufflers, and others) not mentioned in the '165 Patent claims. Presumably, those features add value to the accused products, yet there is nothing in Ms. Smith's analysis to indicate that she made any attempt to account for those unpatented features in assessing reasonable royalty damages or in determining lost profits. Her failure to make any attempt to subtract the value of those features in her analysis renders that analysis unreliable and inadmissible. *See VirnetX*, 767 F.3d at 1328-29 (holding that the district court should have excluded testimony of an expert who used the smallest salable patent-practicing unit as a base and "did not even attempt to subtract any other unpatented elements from the base, which therefore included various features indisputably not claimed by [the plaintiff], e.g., touchscreen, camera, processor, speaker, and microphone, to name but a few.").

Finally, as another court has recognized, adopting Plaintiff's reasoning would effectively allow patentees to circumvent the rules of apportionment through artful drafting. *GPNE Corp. v. Apple, Inc.*, No. 12-CV-02885, 2014 WL 1494247, at *12-*13 (N.D. Cal. April 16, 2014) (holding that a "cursory recitation of the entire device in the asserted claims" did not make the entire device the smallest salable patent-practicing unit; reasoning that adopting the plaintiff's

argument "would allow patent drafters to effectively abolish the smallest salable patent-practicing unit doctrine by simply drafting patent claims to cover end products rather than the individual components that actually embody the invention."). Here, similarly, the Court will not permit Plaintiff's expert to base damages on the entire value of a wet/dry vacuum cleaner instead of apportioning damages merely because Plaintiff included a generic reference to an "appliance" in some of the patent claims.

The cases relied on by Plaintiff do not change the Court's conclusion. Plaintiff cites *Apple v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014), for the general proposition that "the proper inquiry evaluates the expert's methodology in view of the full scope of the infringed claims." *Id.* at 1318. However, *Motorola* does not support Plaintiff's position. In that case, the Federal Circuit reasoned in part that the expert had taken steps to "isolate the value" of the claimed features and had "discounted his royalty calculation to account for . . . features that are outside the scope of the asserted claims," for example by subtracting the value of features that were not covered by the asserted claims in calculating his royalties. *Id.* at 1316-18. That is exactly the type of analysis that is missing from Ms. Smith's report.

Emerson also relies on *ThinkOptics, Inc. v. Nintendo of America, Inc.*, No. 6:11-CV-455, 2014 WL 2859578, at *2 (E.D. Tex. June 21, 2014), in which the court excluded an expert's damages opinion because the expert used as a royalty base only what he deemed to be the "inventive aspect" of the patent, excluding from his royalty base revenue associated with components of the accused device that were alleged to infringe claimed elements that the patentee had not invented. *Id.* at *2. The Court reasoned that he had "exclude[d] the value of claimed elements" and that therefore his analysis did not "carefully tie proof of damages to the claimed invention's footprint in the marketplace" and did not "attempt to award the claimant

damages adequate to compensate for . . . the use made of the invention by the infringer . . . ." *Id.* (quotation marks omitted). It is difficult to assess how similar *ThinkOptics* is to the present case, because the court's opinion in that case does not include the relevant claim language and does not explain precisely what the excluded elements were, how specifically they were claimed, or how they related to the inventive elements of the patent. It is possible that the elements at issue in *ThinkOptics* were more specifically claimed or were more closely tied to the function of the inventive elements than is the generic reference to the "appliance" at issue here. Regardless, however, to the extent that the reasoning of the district court in *ThinkOptics* conflicts with the reasoning of the district court in *GPNE*, this Court finds the reasoning of the district court in *GPNE* to be more persuasive and more consistent with the Federal Circuit's guidance on apportionment.

In sum, the Court finds that Ms. Smith's damages opinion is unreliable and inconsistent with Federal Circuit law. Ms. Smith improperly based her damages on the entire market value of the accused wet/dry vacuums, instead of apportioning damages to the patented feature she identified. Such an approach is impermissible and risks "artificially inflat[ing] the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'" *LaserDynamics*, 694 F.3d at 68 (quoting *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011)). Accordingly, the Court will exclude Ms. Smith's damages opinions for infringement of the '165 Patent.

Plaintiff will be given the opportunity to submit an amended report from Ms. Smith addressing damages for infringement of the '165 Patent that complies with this ruling, as discussed below.

### 3. Ms. Smith's Opinions as to Lost Profits Based on Accessory Sales

Defendants' third argument is that Ms. Smith's damages calculations based on accessory sales should be excluded. In her report, Ms. Smith opined that but for Defendants' infringement, Plaintiff would have made profits from sales of various vacuum cleaner accessories such as nozzles, filters, extension wands, brushes, and other accessories. She calculated Plaintiff's lost profits from those sales as one component of her damages analysis. Defendants argue that this opinion should be excluded because Ms. Smith had an insufficient basis for considering the accessory sales to be "convoyed sales" whose profits may properly be recovered in an infringement action.

"A patentee may recover lost profits on unpatented components sold with a patented item, a convoyed sale, if both the patented and unpatented products 'together were considered to be components of a single assembly or parts of a complete machine, or they together constituted a functional unit.'" *American Seating Co. v. USSC Grp., Inc.*, 514 F.3d 1262, 1268 (Fed. Cir. 2008) (quoting *Rite-Hite*, 56 F.3d at 1550). To be entitled to lost profits for convoyed sales, the related products . . . must be functionally related to the patented product and losses must be reasonably foreseeable." *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1375 (Fed. Cir. 2015). "Being sold together merely for 'convenience or business advantage' is not enough." *Id.* (quoting *American Seating*, 514 F.3d at 1268). For example, in *American Seating*, the Federal Circuit held that the patentee of a patented tie-down system for securing wheelchairs could not recover damages for lost sales of unpatented passenger seats, because "no interrelated or functional relationship inheres between the seats and the tie-down restraint system" and package sales of tie-downs and passenger seats "were for reasons of convenience and one-stop shopping"

rather than a requirement that the two function together. *American Seating*, 514 F.3d at 1269 (quotation marks omitted).

Defendants argue that Ms. Smith's testimony is unreliable and inadmissible because she had an insufficient basis on which to find that the unpatented accessories were convoyed products for which lost profits are compensable. The Court disagrees. As Plaintiff points out, Ms. Smith's testimony indicates that in finding the accessories to be convoyed products, she properly focused on the functional relationship: she found the accessory sales to be convoyed sales because the accessories were "all part of . . . this functional unit of a wet-dry vac" and "they function with the wet-dry vac." That analysis is consistent with Federal Circuit case law indicating that where patented and unpatented products function together as part of a single assembly, a patentee may seek lost profits on the unpatented products. *See Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371-72 (Fed. Cir. 2004) (holding that the owner of a patented beverage dispenser that simulated the appearance of the dispensed beverage could present to the jury a theory of lost profits based on lost sales of unpatented syrup, because the patented dispenser and unpatented syrup are "analogous to parts of a single assembly or a complete machine" because they "function together to achieve one result."). Here, as in *Juicy Whip*, Plaintiff should be permitted to submit to the jury its theory that the patented and unpatented accessories are convoyed products because the vacuums and accessories are parts of a single assembly that function together to achieve one result.

Defendants also argue that Ms. Smith's testimony is unreliable and inadmissible because she failed to consider the fact that the accessories could be used with other wet/dry vacuums on the market and failed to consider that Sears considered buying accessories from another supplier. However, as Plaintiff points out, the Federal Circuit has held that a functional relationship is "not

precluded by the fact that the [patented] device can be used with other materials or that the unpatented material can be used with other devices." *Juicy Whip*, 382 F.3d at 1372 (holding that the owner of a patented beverage dispenser could present to the jury a theory of lost profits based on lost sales of unpatented syrup despite the fact that the syrup could be used with other dispensers and the dispenser could use other syrups). Moreover, as Plaintiff also points out, Ms. Smith's report and deposition testimony indicate that she did give some consideration to these facts.

In sum, the Court finds Ms. Smith's opinions regarding convoyed sales sufficiently reliable to be admissible. Ms. Smith's testimony indicates that she considered the proper factors in reaching her opinion that the accessories constituted convoyed sales, and that she did not do so in a manner that violates Federal Circuit law. To the extent that Defendants believe Ms. Smith had an insufficient factual basis for her opinion or that her opinions are incorrect, they may challenge those opinions through cross-examination and contrary evidence.

### B.  Mr. Gallagher's Opinions

Plaintiff moves to preclude Mr. Gallagher, Plaintiff's damages rebuttal expert, from offering at trial any opinions regarding: (1) a perceived lack of evidence to satisfy the first factor of the *Panduit* test; (2) available non-infringing substitutes for the accused products; (3) whether lost profits are an appropriate or accurate measure of damages; and (4) reasonable royalty rates for the asserted patents.

#### 1.  *Mr. Gallagher's Opinion as to* **Panduit** *Factor One*

Plaintiff first argues that Mr. Gallagher's opinion that there is a lack of evidence to satisfy the first factor of the *Panduit* four-factor test for lost profits ("demand for the patented product") should be excluded. Plaintiff argues that Mr. Gallagher incorrectly applied the first *Panduit*

factor when he opined that it was not satisfied because there is no evidence that the patented features at issue in this case are driving demand.

As Plaintiff points out, the Federal Circuit has specifically rejected the position that the first *Panduit* factor requires demand for the specific patented *feature* that distinguishes the patented product from a noninfringing substitute. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330 (Fed. Cir. 2009). Instead, "the first *Panduit* factor simply asks whether demand existed for the 'patented product,' i.e., a product that is 'covered by the patent in suit' or that 'directly competes with the infringing device.'" *Id.* (quoting *Rite-Hite Corp.*, 56 F.3d at 1548-49)). It is "unnecessary" to "focus on particular features corresponding to individual claim limitations" in assessing demand under the first factor. *Id.* at 1331. Applying *DePuy*, courts have precluded experts from testifying that the first *Panduit* factor requires evidence of demand for the patented features. *Douglas Dynamics, LLC v. Buyers Products Co.*, No. 09-cv-261-WMC, 2014 WL 1350720, at *3 (W.D. Wis. April 4, 2014); *Apple, Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2012 WL 2571332, at *7 (N.D. Cal. June 30, 2012)

The above cases demonstrate that it is not necessary to show demand for the patented feature in order to establish the first *Panduit* factor. Accordingly, to the extent that Mr. Gallagher wishes to testify that a patentee is required to show demand for the patented feature in order to satisfy the first *Panduit* factor, he may not do so.

As Defendants point out, however, the entirety of *Plaintiff's* expert's discussion of the first *Panduit* factor addresses demand for the patented features, not the demand for any patented product. *See* Smith Report, Doc. 281, at pp. 10-11. Essentially, Plaintiff is attempting to demonstrate demand for the patented product by demonstrating demand for the patented features,

even though it is not required to do so. Indeed, Plaintiff acknowledges in its reply brief that "Ms. Smith discusses consumer demand for various features as evidence of consumer demand for the products." Under these circumstances, it would be inappropriate to preclude Defendants' rebuttal expert from offering his opinion that the claimed consumer demand for these features does not exist. Accordingly, although Mr. Gallagher is prohibited from opining at trial that demand for the patented features is required to establish the first *Panduit* factor, he is not prohibited from rebutting Ms. Smith's opinion by opining that there was no demand for the patented features.

### 2. Mr. Gallagher's Opinions Regarding the Availability of Non-Infringing Alternatives

Plaintiff's second argument is that Mr. Gallagher's opinions about the availability of non-infringing alternatives to the accused products should be excluded because he is not qualified to offer them and because they are unsupported and unreliable.

As discussed above, the second *Panduit* factor requires the patentee to show "absence of acceptable non-infringing substitutes" to prove lost profits. In his report, Mr. Gallagher opines that Ms. Smith's lost profits damages analysis is faulty based on the four *Panduit* factors. In addressing the second *Panduit* factor, he states that there are available non-infringing alternatives to the accused products that exist, and he finds that Ms. Smith failed to consider those alternatives in her lost profits analysis. Mr. Gallagher also points to the availability of non-infringing alternatives in reaching his conclusion that lost profits damages are not appropriate in this case.

Mr. Gallagher testified that some of the available non-infringing alternative products are listed on Schedule 2 of his report, and he also referenced in his deposition testimony other products sold by Cleva and Shop-Vac. He testified that he reached the conclusion that the products listed on Schedule 2 were suitable non-infringing alternatives through conversations

with Cleva NA's president about Cleva's capacity to substitute noninfringing products for infringing products. He also indicated in his report that he reached the conclusion that Shop-Vac was willing and able to sell suitable non-infringing alternatives based on the deposition of Sears and on discussions with Mr. Voigt, the Director of Product Management for Craftsman wet/dry vacuums.

Plaintiff argues that Mr. Gallagher's opinions regarding the availability of suitable non-infringing products should be excluded because they nothing more than a "regurgitation" of the testimony of Cleva NA's president or others. Plaintiff further argues that Mr. Gallagher's testimony should be excluded because he lacks the technical qualifications to assess whether an alternative product is non-infringing, emphasizing that Mr. Gallagher admitted that he is not a person "skilled in the art" of vacuum products or patents.

Plaintiff's arguments are unpersuasive. Although "expert testimony simply regurgitating information found in deposition testimony . . . is neither appropriate nor necessary," *SEC v. Shanahan*, No. 4:07CV270 JCH, 2010 WL 415267, at *4 (E.D. Mo. Jan. 26, 2010), it is certainly permissible for an expert to rely on information provided by others in reaching his opinions. Specifically, it is reasonable for a damages expert to rely on technical information provided by others in reaching damages opinions. *See Formax, Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-298, 2014 WL 3057116, at *2 (E.D. Wis. July 7, 2014) ("It is perfectly reasonable for a finance and damages expert to adopt the conclusions of other experts. Whether those conclusions are sound can be explored at trial through cross examination and other expert testimony. But the mere fact that a technical assumption is built into a financial analysis does not render that analysis subject to disqualification before it even sees the light of day."); *see also* Fed. R. Evid. 703 ("[A]n expert may base an opinion on facts or data in the case that the expert has been made

aware of or personally observed."). Indeed, Plaintiff's own damages expert, Ms. Smith, similarly relied on information she obtained from Mr. Davis and others to reach her conclusion that suitable non-infringing alternatives were *not* available. At trial, each party may challenge the technical assumptions underlying the damages experts' analyses through cross-examination and contrary evidence.

As to the question of Mr. Gallagher's qualifications, Mr. Gallagher is a damages expert, not a technical expert. Plaintiff offers no authority for the proposition that a damages expert must be a person skilled in the art of the patented technology to offer opinions regarding whether the *Panduit* factors are satisfied for purposes of a lost profits analysis. Mr. Gallagher properly relied on information he obtained from Mr. Voigt and Mr. Davis in reaching his ultimate conclusions regarding the *Panduit* factors and the appropriateness of lost profits in this case.

Plaintiff's final argument is that Mr. Gallagher has no evidence that the products were either available or on the market at the time of the infringement. *See Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1347 (Fed. Cir. 1999) (noting that a non-infringing alternative must be "available or on the market at the time of infringement" to be an acceptable substitute). The Court acknowledges that it is unclear from the current record whether Mr. Gallagher considered whether the non-infringing products he identified were available or on the market at the time of infringement. However, to the extent that Plaintiff believes that Mr. Gallagher incorrectly assumed that the non-infringing alternatives were available during the relevant time frame when they were not, that matter may be easily addressed through cross-examination and contrary testimony. *See, e.g., Filbert v. Joseph T. Ryerson & Son, Inc.*, No. 4:10CV1189 JCH, 2012 WL 2154347, at *3 (E.D. Mo. June 13, 2012) ("Defendant's assertions concerning flaws in [the expert's] methodology or underlying assumptions are proper subjects

for [the Defendant's] own expert testimony and for thorough cross-examination before the trier of fact") (quotation marks omitted).

For the above reasons, the Court will deny Plaintiff's motion to exclude Mr. Gallagher's opinions regarding non-infringing alternatives.[2]

### 3. Mr. Gallagher's Opinion That Lost Profits Are Not an Appropriate Measure of Damages

Plaintiff next argues that Mr. Gallagher's opinion that lost profits are not an appropriate measure of damages in this case should be excluded because it is based in large part on what Plaintiff believes are his flawed and inadmissible opinions regarding the first and second *Panduit* factors. Because the Court has already rejected most of Plaintiff's arguments regarding the inadmissibility of Mr. Gallagher's opinions regarding the *Panduit* factors, the Court will also reject Plaintiff's request to exclude entirely Mr. Gallagher's opinions regarding the appropriateness of lost profits.

However, as the Court has indicated, Mr. Gallagher may not testify that a patentee is *required* to show demand for the patented feature in order to satisfy the first *Panduit* factor. Similarly, he may not testify that lost profits are inappropriate in this case because a patentee is required to show demand for the patented feature in order to satisfy the first *Panduit* factor. However, he is not prohibited from rebutting Ms. Smith's opinions by opining that there was no demand for the patented features.

### 4. Mr. Gallagher's Reasonable Royalty Opinions

Plaintiff's final argument is that Mr. Gallagher's opinions regarding reasonable royalty rates are based on inconsistent and improper opinions regarding the existence of available non-

---

[2] Because the Court has already granted summary judgment of non-infringement as to the '083 and '769 Patents, the Court need not address Plaintiff's additional arguments specifically directed toward Mr. Gallagher's opinions regarding those patents.

infringing alternatives to the accused products. The inconsistencies identified by Plaintiff relate only to the '083 and '769 patents, which are no longer at issue in this lawsuit. Plaintiff's remaining arguments on this point merely reference its earlier arguments regarding the Mr. Gallagher's opinions about the availability of non-infringing alternatives, and the Court has already rejected those arguments. Thus, the Court will deny Plaintiff's motion to exclude Mr. Gallagher's opinions regarding reasonable royalties.

IV.   CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants' Motion to Exclude Testimony of Plaintiff's Proffered Damages Expert, Ms. Donna Beck Smith (Doc. 280) is **GRANTED IN PART** and **DENIED IN PART**. The motion is granted with respect to Ms. Smith's opinions regarding damages for infringement of the '165 Patent. It is denied in all other respects.

**IT IS FURTHER ORDERED** that Plaintiff has until **Monday, December 28, 2015** to file an amended expert report from Ms. Smith that addresses damages for infringement of the '165 Patent. Defendants may depose Ms. Smith on the topic of her amended report by **Monday, January 11, 2015**. Defendants are also granted leave to file a supplemental expert report to respond to Ms. Smith's amended report by **Monday, January 18, 2015**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Testimony of Mark Gallagher (Doc. 284) is **GRANTED IN PART** and **DENIED IN PART** as described above. The motion is granted with respect to Mr. Gallagher's testimony that a patentee is required to show demand for the patented features to satisfy the first factor of the *Panduit* test. It is denied in all other respects.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of December, 2015.